[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This proceeding first came to the court by way of complaint dated September 8, 1998 and returnable October 6, 1998 in which complaint the plaintiff husband sought a dissolution of the marital union, custody of the minor children, both temporary and permanent, child support and child support pendente lite, exclusive use of the marital residence, assignment of property pursuant to Connecticut General Statute (C.G.S.) § 46b-81 and such other relief as the court felt was appropriate.
Certain motions accompanied the plaintiffs petition. The defendant appeared pro se by virtue of appearance filed September 30, 1998.
On October 19, 1998 the defendant appeared by counsel and on said date the defendant filed an answer and a cross complaint, in which cross complaint the defendant claimed a dissolution of the marriage, custody of the minor children, temporary and permanent, alimony, counsel fees, exclusive use of the marital residence, debt allocation, return of personal property and restoration of her maiden name.
On October 26, 1998 a stipulation was executed by the parties and their respective counsel, which provided for the appointment of an attorney for the minor children. In addition, the issue of custody, visitation, support and matters of like nature were referred to Family Relations.
On February 24, 1999 the defendant filed an application for relief from abuse.
CT Page 14237 On May 4, 1999 new counsel appeared for the plaintiff petitioner.
On May 21, 1999 the plaintiff and the defendant filed a custody agreement as concerns the status of the minor children at that time.
On May 24, 1999 the parties, by their respective counsel, undertook an agreement with regard to the prospective listing of the marital residence of the parties.
On July 6, 1999 the Court, Mihalakos, J., entered certain orders with regard to a motor vehicle and the use thereof by the defendant.
On June 9, 1999 incident to a motion for attorney's fees filed by Attorney Sarette Briggs Williams who had earlier been appointed as attorney for the minor children by the Court, Kenefick, J., granted counsel for the children the sum of $3,500.00 as counsel fees at that point. In addition, incident to an order entered by the Court, Kenefick, J., on September 13, 1999, the sum of $1,000.00 was authorized to be released from escrow proceeds to the defendant's counsel.
The parties appeared before the court on October 13, 1999 with their respective counsel and the matter was heard to a conclusion by the court. Also present was the attorney for the minor children, Sarette B. Williams.
On the basis of the foregoing, and the testimony at trial, the Court makes the following findings of fact.
The plaintiff Jon Guzallis and the defendant Elizabeth Guzallis were joined together in marriage on September 12, 1992 in the Town of East Hampton.
The defendant's maiden name was Elizabeth Machnik.
Both parties have resided in the State of Connecticut for more than one year prior to the initiation of the proceedings.
It appears that the marriage has irretrievably broken down with no reasonable prospect for reconciliation.
The plaintiff and the defendant have three minor children CT Page 14238 issue of their marriage, to wit Stephen J. Guzallis, born January 4, 1994, Michael E. Guzallis, born June 29, 1995, and David B. Guzallis, born June 15, 1997.
No other minor children have been born to the defendant since the date of the parties' marriage.
Neither party is presently receiving assistance as welfare from either the State of Connecticut or any subdivision thereof.
The plaintiff is an electrical contractor and holds a license from the State of Connecticut incident thereto. He is presently self-employed.
At an earlier date, the plaintiff had worked for different contractors at the hourly rate of $20.00 per hour.
The plaintiff was motivated to become self employed after having been laid off after working for a contractor for one year and not being advanced by his employer.
Plaintiffs prior employers were CNF Company and Kendland Company.
On earlier occasions the plaintiffs hourly rate of earnings were $18.00 per hour.
The plaintiff presently has health insurance coverage which costs him $100.00 monthly.
There is no current outstanding insurance for health or allied matters insofar as the three minor children are concerned.
During one point during the marriage the defendant wife was employed at G. Fox Co., a corporation that no longer exists.
Prior to that, the defendant had worked for the Munson Candy Co.
The defendant at one point remained in the home looking after the children for a period of three or four years. At one point the defendant was an assistant manager at Filene's at $18.00 per hour.
The plaintiff, in his capacity as an electrical contractor, CT Page 14239 presently charges an hourly rate which is $25.00 per hour.
The plaintiff presently resides at 21 Maple Avenue in East Hampton, which is the home of his parents and for which he allegedly pays $150.00 a week in payment for his occupancy of the premises with the children.
The plaintiff works during a daily period of 7:00 a.m. to 5:00 p. m.
The plaintiff is the owner of certain premises known as 16 Oak Street in Norwich, which property is occupied by a tenant.
The plaintiff and the defendant had formerly been the owner of their then marital home located at 74 Plain Hill Road in Norwich, which property has been sold and after the payment of encumbrances, expenses of sale and like matters, a sum certain is being held by Attorney Archambault in escrow pending the outcome of these proceedings. The approximate amount being $31,596.00.
At the time of the purchase of the 74 Plain Hill Road property in Norwich the defendant contributed a substantial sum toward the purchase price, the defendant having received an inheritance from her aunt in the approximate amount of $138,000.00, said inheritance coming to the defendant about three months after the marriage.
With the proceeds from that inheritance the plaintiff and the defendant established IRA accounts; the defendant gave the plaintiff $5,000.00 for such an account.
The defendant used a portion of the money for the purchase of furnishings for the home and for the purchase of certain animals which were kept and maintained by the defendant.
The property at 16 Oak Street in the name of the plaintiff was property which he held prior to the date of the marriage.
The defendant seeks alimony in the amount of $175.00 per week.
The defendant indicates that she is presently paying $650.00 a month for the premises which she occupies, which premises have three bedrooms so that the minor children who had been residing with the plaintiff will have a suitable place to stay during CT Page 14240 visits.
The defendant has a position with Big Y Supermarket as a baker.
The defendant's education extended through one year in college.
It appears that the $5,000 IRA established in the plaintiffs name has been used and exhausted and is no longer an asset.
The plaintiff is age 34, appears to be in excellent health.
The selling price of the property at 74 Plain Hill Road earlier mentioned was at a price of $129,000.00.
The plaintiff has indicated that he is content to have the defendant retain most of the items of personalty which previously constituted the furnishings for the home on Plain Hill Road.
The defendant wishes to retain her wedding and engagement ring and her beaver fur coat.
The plaintiffs request of the Court is that the funds remaining in the escrow account be used to pay off joint debts of the parties.
During the course of the marriage and the parties' residency on Plain Hill Road, the defendant kept a variety of animals including 11 emus, two horses, cows, pigs, guinea hens, chickens and pheasants.
After the sale of the Plain Hill Road property, the plaintiff sold one of the horses, all of the animals formerly held by the parties have been disposed of to good and proper homes.
The plaintiff and the defendant have been separated since September 8, 1998.
The defendant at or about that time went into a rehabilitation program incident to problems pertaining to the immoderate use of alcohol. The plaintiff also represented that the defendant had a romantic interest outside the marriage but there was no independent evidence thereof.
CT Page 14241 The plaintiff left the formerly owned marital home on Plain Hill Road several weeks after the defendant returned from her program of rehabilitation. The plaintiff left, went to reside with his parents and the children accompanied him.
The plaintiff terminated making the mortgage payments on the property in February of 1999. Testimony indicated that the defendant, after the plaintiff had vacated, had tenants in the Plain Hill property but never received any income therefrom.
After the plaintiff had moved out of the Plain Hill Road property and while occupied by the defendant, apparently the premises was subject to some water damage involving burst pipes during the cold weather season.
The defendant at this time apparently resides with two other individuals; to wit, one Mark Roth, one Elmer Rose. Apparently the defendant however has her separate quarters incident to said residency.
The plaintiff testified that the defendant immoderately used alcohol. That he did not wish the marriage to be dissolved and apparently endeavored to do what he could to keep the union together but apparently to no avail.
The defendant, prior to present problems with regard to alcohol, had successfully recovered from any problems incident thereto for a period of 12 years before the present problems.
At the time of the purchase of the 74 Plain Hill Road property the defendant contributed the sum of $42,000.00, a portion of the inheritance from her aunt incident to making the purchase possible, and as earlier indicated, a portion of her inheritance was used to furnish that property.
In years past, prior to his working as an independent electrical contractor, the plaintiff earned as much as $50,000.00 annually from his position with Kendland, plus at that time, self-employed additional earnings which further augmented his income.
For certain periods of time when the plaintiff was engaged in his self-employment activities as an electrical contractor, he had two employees.
CT Page 14242 At an earlier point in time, when the plaintiff was employed by CNF, the minor children issue of this union, were covered under the so-called Husky program for purposes of health insurance.
The minor child Stephen, now age 5, it is represented may have problems associated with being autistic.
At an earlier point in time, the plaintiff was employed by a firm known as Matthews Interior.
The plaintiff complained that the animals which were kept and cared for by the defendant were a heavy financial burden and not justified under the circumstances.
It appears that one of the two horses that the defendant had was a gift to her from one Elmer Rose.
Incident to the sale of one of the horses by plaintiff, he received the sum of $300.00.
The testimony was to the effect that one of the defendant's friends took the animals known as emus and is caring for them.
At one point in time, the defendant worked at a restaurant where it is alleged that she met one Mark Roth incident to her acquaintance and friendship with him.
The beaver floor-length fur coat earlier mentioned was the property of the defendant prior to the marriage and appears to be her sole and separate property.
The plaintiff complained that some items of furniture for the small children had been retained by the defendant and was desirous of having it returned to him.
It is the plaintiffs contention that during the course of the marriage and after the purchase of the property on Plain Hill Road that his efforts in paying the mortgage, taxes and expenses incident thereto put him on an equal footing with the defendant who provided the $42,000.00 down payment from her inheritance.
The 1995 Dodge Caravan is used by the plaintiff incident to his electrical contracting duties.
CT Page 14243 The plaintiff represents that he has not run up any credit card debt, made the monthly mortgage payments over the term of the marriage and should be given proper credit therefor.
The plaintiff testified that the defendant at some point in the past had been arrested for a substance abuse problem, not alcohol, but no independent evidence of the same was presented to the court.
The plaintiff, age 33, is in good health, his education extended to completing high school. He does not have any military service.
The testimony was to the effect that all of the children are in good health. However, the child Stephen may have autistic inclinations.
The defendant acknowledged that her employment during the marriage was intermittent and brief.
The defendant acknowledges that it may be in the best interest of the children at this time to be with the plaintiff father.
While the parties were living together and while the animals were at the Plain Hill Road property, the defendant cared for them pretty much exclusively as well as looking after the interest of the family.
The defendant indicated that stresses in the marriage precipitated her relapse from 12 years of abstinence with regard to strong drink.
The defendant met Mark Roth who was a chef at the restaurant where she worked. Mr. Roth apparently is also an individual recovering from substance abuse. Roth apparently helped and guided the defendant with regard to her seeking help, assisted in her entry into the Elm Crest facility in Portland, Connecticut.
The defendant's position was to the effect that the plaintiff was not supportive during problems of her substance abuse and did not recognize the problem for what it was.
The defendant advised the plaintiff about her past prior to entering into the marital situation. CT Page 14244
It is the defendant's position, although no medical testimony was adduced at the proceeding, that the minor child Stephen has autistic inclinations, that he was evaluated by the Institute of Living in Hartford, and by two other physicians in Norwich. The defendant feels that the plaintiff cannot accept the possible problems of autism for the child.
The defendant acknowledged to the court that the present time she did not feel sufficiently strong to undertake the care of the three children.
At one point in time before the former home residence on Plain Hill Road was sold, the defendant while residing there received energy assistance from the State of Connecticut.
The defendant's position is to the effect that after she was released from the rehabilitative program that she received no financial help or assistance from the plaintiff.
The defendant represents and claims that the plaintiffs mother improperly disposed of or threw out some of her goods and possessions while she was in recovery.
As earlier indicated the animals that she had previously cared for had been disposed of by the time she returned from the rehabilitation program.
The defendant agreed to the sale and disposal of the 74 Plain Hill Road property because she felt she was no longer in a position to maintain the same either financially or physically.
It is the defendant's position that the balance remaining in the escrow account should be returned to her solely because of her use of her inheritance earlier noted which occurred at the very beginning of the marriage of the parties.
The Court notes that among the exhibits no document of appraisal by a broker or a real estate appraiser was offered to the court as concerns either the liquidated property at Plain Hill Road or the property still remaining in the name of the plaintiff at 16 Oak Street in Norwich.
It is the position of the defendant that she is entitled to 50% of the plaintiffs pension benefits which will be vested in CT Page 14245 January of the year 2000.
The defendant presently has health insurance incident to her employment with Big Y and indicated to the Court that the children could be provided for under that umbrella of insurance.
The defendant's sole means of transportation at this time is a 1989 Ford Tempo, which she values at $2,000.00. The defendant claims that there are mechanical problems with the subject motor vehicle.
From the exhibits entered during the proceedings, the Court makes the following findings.
Plaintiffs Exhibit A is a promissory note dated April 15, 1999 in the principal amount of $16,535.00 signed by Jon Guzallis and payable to Andrew and Edith Guzallis of 21 Maple Avenue in East Haddam, Connecticut, the home in which the plaintiff and the minor children are presently residing.
The note purports to indicate that the $16,535.00 is a debt due and owing from the plaintiff to his parents at the rate of $500.00 per month for 35 months. The witnesses on the note are the designated payees.
From Defendant's Exhibit 4, the Court notes that the plaintiff received in 1997 $1,897.75 from Paul G. Matthews of Matthews Custom Interiors in East Haddam for services rendered.
Defendant's Exhibit 4 has attached thereto a statement from the Internal Revenue Service indicating that the plaintiff and the defendant owe the Internal Revenue Service the sum of $1,376.56 as a result of changes or omissions in the 1996 joint return. Defendant's Exhibit 5 is a copy of Anthem Casualty Insurance Group indicating the insurance coverage had by the plaintiff in 1997 through 1998 incident to his work as an electrical contractor.
Defendant's Exhibit 6 is an unemployment notice from the Kendland Company, Inc. to the plaintiff merely indicating the date of the plaintiffs last employment with that firm; to wit, March 20, 1998.
Defendant's Exhibit 7, statement from Kendland Company, Inc., money purchased pension plan of trust concerning the plaintiff CT Page 14246 Jon Guzallis indicating that the vested amount in favor of the plaintiff is $9,182.95, with a capital account balance of $15,304.31.
Defendant's Exhibit 8, statement of Kendland profit sharing plan and trust with regard to Jon J. Guzallis, dated January 1, 1998, indicates that the December 31, 1998 balance in the account is to the amount of $39,163.38, and the vested amount $25,155.10.
The exhibit also indicates that the date of initial employment for the plaintiff was March 1, 1994.
Defendant's Joint Exhibit 13, settlement statement with regard to the premises known as 74 Plain Hill Road in Norwich verifies that the selling price was $127,000.00, that at the time of sale there were a variety of charges and payouts including two mortgages to CGSB and to one Grant Apthorp, reflecting a total amount due to the sellers at the time of sale of $35,182.03.
Defendant's Exhibit 2 merely reflects a partial rebate from Litchfleld Mutual Fire Insurance Company to the plaintiff and the defendant at the time of the sale with regard to prepaid insurance in the amount of $155.00.
Defendant's Exhibit 12 is a statement as concerns request for the approval of legal fees for the defendant's counsel, which reflects the $1,000.00 earlier received.
Defendant's Exhibit 11 consisting of 25 checks stapled together covering a period from 1996 through 1997 indicates payments to cash or to designated employees of the plaintiff, persons working with him, incident to his activities as an electrical contractor.
Defendant's Exhibit 10, statement from Dr. Mary Eslick for medical services rendered in the amount of $162.00. The services were rendered to the defendant.
Defendant's Exhibit 9 verifies expenditures by the defendant for heating oil, furnace maintenance, etc., during her occupation of the premises after the plaintiff vacated.
Defendant's Exhibit 3, 25 checks, the majority of which are payable to Emigrant Savings, the mortgagee bank, in the amount of approximately $852.00 a month, the same fluctuating up and down CT Page 14247 somewhat with regard to matters pertaining to tax, escrow and so forth. The checks were drawn on Fleet Bank on the account of Elizabeth G. Guzallis, the defendant in these proceedings.
From the financial affidavit of the defendant, the Court notes her employment as a baker with Big Y Supermarket on West Main Street in Norwich, her weekly gross is $354.00, total deductions $60.53 for a net of $293.47.
Defendant's claimed weekly expenses amount to $325.00.
The defendant's financial affidavit reflects a total of $25,013.25 in various and sundry debt, including the debt to the IRS, Discover Card, First USA, Associates, VISA, Sears card and a multitude of other small debts and obligations as reflected on the financial affidavit.
The defendant's financial affidavit values the Oak Street property where she is presently not an owner of record as valued at $85,000.00 with a mortgage of $72,000.00, for an equity of $13,000.00.
Defendant reflects a 1995 Plymouth Voyager motor vehicle with a $1,000.00 equity and a 1989 Ford motor vehicle with a $2,000.00 equity.
The defendant values her jewelry, personal property and matters of like nature including the fur coat and silverware at $16,000.00.
The only other asset reflected on the defendant's financial affidavit is the funds being held by the escrow agent, Attorney Archambault, shown as $30,499.03.
The plaintiffs financial affidavit verifies that he is a self-employed electrician, weekly gross $900.00, total weekly deductions $277.00 for a net of $623.00.
In addition, there is income from rental property at the Oak Street premises of $232.00 a week, mortgage and expenses incident thereto, leaving a net from the Oak Street property of $17.00, for a total net weekly income of $640.00, total weekly expenses claimed by the plaintiff, $674.00.
The plaintiff claims total debt of $37,727.00. CT Page 14248
The plaintiff shows a 0 equity in the premises known as 16 Oak Street in Norwich and a negative equity in a 1995 Dodge Caravan motor vehicle.
The plaintiff reflects the $31,696.00 in the escrow account, values his retirement plan at $9,182.00 and his Kendland pension plan at $25,155.00.
From the health form the Court finds that this was the first marriage for both parties and that the education of each extended through completing high school.
 Discussion
This is a marriage of 7 years. As indicated, the first marriage for both.
The marriage has resulted in three small children; Stephen, with suggestions of problems pertaining to autism, age 5, Michael, age 4, and David, age 2.
The defendant, without doubt, made a substantial financial contribution to the marriage by virtually using her entire inheritance to assist and make possible the purchase of the home at Plain Hill Road, properly furnished the same, and established IRA accounts, and in addition, to have certain pets and animals at the farm location.
The defendant apparently being a lover of animals found the same presumably conducive to a state of emotional well being.
It appears that the defendant candidly advised the plaintiff with regard to her past history as to certain frailties in the department of the immoderate use of alcohol and/or substance.
The Court is inclined to the view that the plaintiff perhaps has not fully appreciated the nature of the defendant's problem and should have been more tolerant or supportive incident thereto.
It would appear that the defendant acknowledges that she is not yet in a position where she could properly look after and handle the care and upbringing of three small boys because of problems in her life that have not yet been overcome. CT Page 14249
The defendant seems, however, genuine in her concern for the welfare of the children and would appear to be striving under difficult circumstances to remain in an active continuing state of recovery.
During the course of the proceedings the Court made inquiry of the attorney for the three minor children and has carefully reviewed the requests or proposed orders submitted by the attorney for the minor children, which will be treated hereafter in the orders entered by the Court.
The Court believes that it is the hope and anticipation of the attorney for the minor children that the defendant mother, particularly mindful of the ages of the children, they are all extremely young, in the event that the defendant is successful in her rehabilitation can reenter on a more direct basis the matters pertaining to custody as that will be extremely important to the stability for the children, emotional and otherwise, in their formative years. The defendant must be able to demonstrate that she has achieved a stable degree of rehabilitation from her problems.
 The Law
The Court has considered all of the statutes which apply in matters of this nature including without limitation C.G.S. §46b-56 et seq. regarding custody and visitation, C.G.S. § 46b-82
regarding alimony, C.G.S. § 46b-84 regarding child support.
The Court has considered all of the applicable case law that governs the matter.
The Court has considered the testimony of all witnesses, their candor or lack thereof and all exhibits and the arguments of counsel.
The Court has considered the length of the marriage, the problems with which it was beset, the age, health, station, occupation, employability, estate and the needs of the parties based on what is available to the Court.
The Court enters the following orders.
The plaintiff and the defendant shall share joint legal CT Page 14250 custody of the three minor children, Stephen, Michael and David.
The plaintiff father shall continue to have primary physical custody of the minor children mindful of the defendant's recovering condition.
The defendant mother shall have liberal rights of visitation which shall accommodate her work schedule. Current visitation shall allow mother access with the children every other Saturday from approximately 12:30 p. m. through Sunday 5:00 p. m. Weekend access may be extended to Monday if that day is a holiday. The return time on Monday shall be mutually agreed to by the parties. Mother shall also be afforded week day access from after school/daycare until 7:00 p. m. on one day per week. Week day access may be extended to an overnight provided mother's work schedule permits. In this instance mother shall be responsible for returning the children to school/daycare.
The parties shall share the transportation responsibilities in connection with the weekend visitation. Mother shall be responsible for the transportation in connection with the week day access.
Mother shall also be allowed holiday access as follows:Christmas from 1 p. m. until December 28th in the odd years. If her work obligations preclude such access, mother shall notify father two weeks prior as to what portion of this access she will exercise. In the even years mother shall be afforded access from Christmas Eve at 3 p. m. until 1 p. m. on Christmas Day. Mother shall also be allowed two additional nights of access in the even years (after December 28th) during the academic break associated with Christmas. Mother shall notify father which days she will exercise her access two weeks prior to exercising her access.
Thanksgiving: In the even years mother shall have the children from the day before Thanksgiving after school until the Sunday after Thanksgiving until 3 p. m. Father shall have the same rights of access in the odd years. Mother and Father shall each notify the other two weeks prior to the commencement of such access what portions, if any, they will exercise.
Spring Break: If one is observed in the school district where the children reside, mother shall have access with the children in the even years. Mother shall notify father what portion if any of such period she will observe, within two weeks of its CT Page 14251 commencement. Father shall have the same right of access in the odd years and shall abide by the notice provision. If an academicWinter Break is observed, mother shall have the children in the odd years (separate from Christmas).
Summer Vacation: Mother shall have the children for two weeks which may be taken consecutively or separately. Mother shall notify father which weeks she shall exercise by June 1st of each year. Mother's failure to notify father of her election by June 1st shall not preclude her from exercising her rights, as long as such notice is reasonable.
Father shall list mother as the children's mother on all school, daycare, and medical forms, and supply her address and telephone number. Mother shall also be listed as an emergency contact person where such information is requested.
Father shall keep mother informed of all school and daycare activities, extracurricular in which a parent may attend or is invited.
Third parties shall not attend any school or daycare activities, or medical/dental appointments unless the parties mutually agree.
To facilitate effective parenting and to minimize the potential for conflict between the parties which will surely detrimentally affect the minor children the parties shall engage in joint family counseling as long as deemed necessary by the counselor. The focus of the counseling shall be nurturing the children to maintain a strong healthy relationship with both parties.
The issue of visitation may be reviewed upon motion of either party.
Both parties shall acquire health and dental insurance for the children through their employment. If none is available the parties shall split the costs of such coverage.
The parties shall not remove the children from the state for vacation purposes without notifying the other party of their whereabouts, including an address and telephone number.
In the event that one party is not available to care for the CT Page 14252 children, the other party shall be notified and given the option of overseeing their care, as long as doing so shall not interfere unreasonably with the children's school activities, extra-curricular involvements or daily regimen.
Whenever possible father shall schedule all medical and dental appointments when mother is available to accompany the children. Third parties may not accompany the children to medical or dental appointments unless neither party is unavailable.
Neither party shall permit third parties to speak detrimentally of the other party in the presence of the children, nor shall the parties engage in such harmful activity.
Both parties may be permitted to contact the children via telephone at least once per day.
Father shall obtain mother's agreement before enrolling the children in extracurricular activities which are scheduled to occur during mother's visitation access time.
At this time without prejudice, the defendant shall not pay any support for the minor children to the plaintiff due to her present and ongoing state of recovery regarding substance abuse, her modest income and the state of her indebtedness.
The plaintiff shall pay the defendant the sum of $50.00 weekly as alimony for a term of seven years, modifiable as to amount but not as to term.
From the funds presently being held in escrow resulting from the sale of the parties' marital home, approximately $31,000.00, the sum of $10,000.00 shall be used to pay off or reduce the joint debts and liabilities of the parties and the remaining $21,000.001 shall be the sole and separate property of the defendant mindful of her original down payment, the furnishing of the home and the establishment of the IRA accounts from her inheritance.
The plaintiff may keep and retain the premises known as 16 Oak Street, the Court does not believe that the defendant could assume and handle the debt thereon.
The defendant may retain her personal belongings including her fur coat and jewelry. CT Page 14253
The defendant shall receive and have 30% of the current vested value of the plaintiffs Kendland pension and retirement plan by QDRO.
The Court enters no orders as to attorney's fees, for each party shall be responsible for their own.
Each party shall be responsible for any debts remaining after the application of the $10,000.00 as shown on their financial affidavits.
The marriage of the parties is dissolved on the basis of irretrievable breakdown and the parties are declared to be single and unmarried.
Austin, JTR